UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| PRESERVE MURRELLS INLET, INC., | ) | Civil Action No. 2:26-cv-02751-DCN |
| | ) | |
| Plaintiff, | ) | |
| | ) | **COMPLAINT** |
| v. | ) | |
| | ) | |
| GEORGETOWN COUNTY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

Plaintiff Preserve Murrells Inlet, Inc. by way of its Complaint, would respectfully show unto this Honorable Court the following:

**NATURE OF ACTION**.

1.      This action arises out of Georgetown County's ("the County") ongoing violations of the Federal Water Pollution Control Act ("Clean Water Act" or "CWA"), 33 U.S.C. §§ 1251 *et seq.*, all relating to requirements under its National Pollutant Discharge Elimination System ("NPDES") General Permit for Stormwater Discharges from Regulated Small Municipal Separate Storm Sewers ("SMS4" or "SMS4 Permit").

2.      Plaintiff Preserve Murrells Inlet, Inc. ("PMI") brings this citizen suit pursuant to Section 505(a)(1) of the Clean Water Act ("the Act" or "CWA"), 33 U.S.C. § 1365(a)(1), against Defendant Georgetown County ("the County"), seeking injunctive relief and civil penalties.

**JURISDICTION AND VENUE**

1

67913625 v1

3.     This Court has subject matter jurisdiction over this case pursuant to 33 U.S.C. § 1365 and 28 U.S.C. § 1331, as this action includes claims under federal law to enforce provisions of the Clean Water Act, 33 U.S.C. § 1251 *et seq.*

4.     On March 05, 2024, PMI and Murrells Inlet Seafood[1] notified Defendant of their intention to file suit under the Clean Water Act, in compliance with the statutory notice requirements set forth in 33 U.S.C. § 1365(a)(1).

5.     More than sixty (60) days have elapsed since Plaintiff served its notice letter on Defendant pursuant to the CWA, during which time, no regulatory agency had commenced and diligently prosecuted an action to redress the CWA violations alleged herein. 33 U.S.C. § 1365(b)(1)(B).

6.     Venue is appropriate in this district pursuant to 33 U.S.C. §1365(c), because the source of the violations is in Georgetown County, South Carolina, which is located within this judicial district.

**PARTIES**

7.     Plaintiff PMI is a 501(c)(4) non-profit community service organization located in Georgetown County, SC. PMI's mission is to preserve the ecological health of the Inlet and the character of the historic fishing village. PMI achieves its mission by educating the public, advocating for the Murrells Inlet estuary's protection, and participating, where necessary, in

---

[1] Subsequent to sending the 60-day notice letter, Murrells Inlet Seafood was sold and ceased doing business, thereby extinguishing its rights to proceed with a citizen suit under 33 U.S.C. § 1365, generally, and under the NOI, specifically.

2

67913625 v1

legal and administrative proceedings. Members of PMI recreate, fish, boat, live near or otherwise use and enjoy the Murrells Inlet Estuary ("the Inlet").

8.     PMI is a "citizen" for purposes of Section 505 of the CWA, 33 U.S.C. § 1365, and files this citizen suit on behalf of itself and its members.

9.     Defendant County is a body politic corporate and political subdivision of the State of South Carolina, and qualifies as a "municipality" as defined in 33 U.S.C. § 1362(4), and is a "person" within the meaning of Section 502(5) of the CWA, 33 U.S.C. § 1362(5).

10.     The relief sought herein will redress the harms to the Plaintiff and its members caused by the County's activities.

## STATUTORY AND REGULATORY BACKGROUND

### The Clean Water Act

11.     Section 301(a) of the CWA provides that the discharge of pollutants into navigable waters of the United States is unlawful, unless the discharger complies with the Act's requirements.

12.     Under this Section 402, the discharge of "pollutants" from a "point source" into "waters of the United States" is unlawful, unless such discharge is pursuant to a NPDES permit issued by the EPA, or by a state that has received approval to issue such a permit pursuant to CWA Section 402(b). 33 U.S.C. §§ 1311(a), 1342(a)-(b), 1362(12)(A).

13.     The Inlet is a "water" of the state as defined in the South Carolina Pollution Control Act and is considered "navigable waters" and "water of the United States" as defined in the CWA. S.C. CODE ANN. § 48-1-10(2); 40 C.F.R. § 120.2.

3

14.     The EPA can delegate administration of the CWA or portions thereof to individual states. 33 U.S.C. §1342(b). The EPA authorized the South Carolina Department of Health and Environmental Control ("the Department") (now the Department of Environmental Services) to administer aspects of the CWA, including Section 402's NPDES permitting program. S.C. Code of Regulations, R. 61-9, § 122.1(a)(1). Just like Section 402 of the Federal CWA, South Carolina's regulations require permits for the discharge of "pollutants" from any "point source" into "waters of the United States." *Id.* at § 122.1(b).

15.     One of the NPDES general permits that the Department administers within South Carolina includes its NPDES General Permit for Stormwater Discharges from Regulated Small Municipal Separate Storm Sewers ("SMS4" or "SMS4 Permit"). 33 U.S.C. § 1342(p).

16.     Permits for discharges from municipal storm sewers shall require controls to reduce the discharge of pollutants to the maximum extent practicable, including management practices, control techniques and systems, design and engineering methods, and such other provisions as the Administrator or the State determines appropriate for the control of such pollutants. 33 U.S.C. § 1342(p)(3)(B).

17.     The regulations define "municipal separate storm sewer" as a conveyance or system of conveyances (including roads with drainage systems, municipal streets, catch basins, curbs, gutters, ditches, man-made channels, or storm drains) owned or operated by a city and designed or used for collecting or conveying storm water. 40 C.F.R. § 122.26(b)(8).

18.     Stormwater runoff refers to the direct response of a watershed to precipitation, and it encompasses both surface and subsurface runoff, which enters ditches, streams, storm

4

sewers, or other concentrated flows during and after precipitation events. S.C. CODE ANN. § 48-14-20(13).

19.     MS4s are legally defined as point sources and thus subject to CWA regulation. The designation of large, medium, or small MS4 is based on urbanized areas determined by the most recent census. While the operators of medium and large MS4s must receive individual NPDES permits for their discharges, SMS4 operators can choose coverage under a general permit or obtain individual permit coverage.

20.     For any municipal discharges other than large municipal discharges, any such permit shall provide for compliance as expeditiously as practicable, but in no event later than 3 years after the date of issuance of such permit. 33 U.S.C. § 1342(p)(4)(B). Additionally, as a condition of permitting, the County must comply with its Stormwater Management Plan ("SWMP") requirements. The SWMP describes the Best Management Practices ("BMPs"), or techniques and procedures used to prevent or reduce the pollution of waters.

Impaired Waters and TMDLS

21.     Under the CWA, states are responsible for identifying and ranking waterbodies that fail to meet water quality standards in what is referred to as a Section 303(d) list for impaired and threatened waters. CWA Section 303(d), 33 U.S.C. §1313(d). These "impaired waters" are not suitable for certain uses and may threaten human and environmental health.

22.     MS4 permitting often intersects with the operator's CWA obligations in relation to impaired waterbodies. Under the CWA, states are required to take remedial action for waterbodies that do not meet the water quality standards in the Act. States are specifically required to establish a Total Maximum Daily Load ("TMDL") for pollutants discharged into an

5

67913625 v1

impaired waterbody. 33 U.S.C. § 1313(d). These TMDLs are then factored into NPDES permitting for the watershed, especially including MS4 permitting. In other words, MS4 permitting must include limitations to account for the presence of any impaired receiving waterbodies.

23.     The Murrells Inlet estuary is listed as impaired the State's § 303(d) list of impaired waters pursuant to 40 C.F.R. § 130.7 for fecal coliform bacteria, meaning the waterbody does not meet certain water quality standards for that pollutant. This impairment affects shellfish harvesting and recreational uses.

24.     As shellfish harvesting waters, the Inlet is subject to the fecal coliform water quality standards set forth in S.C. Code Regs. 61-68. Under these standards, fecal coliform concentrations may not exceed a geometric mean of 14 MPN/100mL, with no more than 10% of samples exceeding 43 MPN/100 mL.

25.     A component of a TMDL is a Waste Load Allocation (WLA). WLAs are the portion of a receiving water body's total loading capacity that is allocated to its existing or future point sources of pollution to ensure that the water body continues to meet applicable water quality standards. 40 C.F.R. §§ 130.2, 130.7.

26.     The SMS4 Permit requires the County to update a TMDL Monitoring and Implementation Plan or provide updates on the progress of any of the limited number of projects and the maintenance of structural stormwater controls. SMS4 Permit Part 3.2.1 ("Where a TMDL Wasteload Allocation (WLA) is assigned to point sources, permittees shall review its SWMP requirements for the control of stormwater discharges to WQMS identified in the TMDL. For SMS4 discharges of the pollutant(s) of concern to TMDL waters, permittees shall identify

6

67913625 v1

discharges located in the TMDL watershed draining to the impaired WQMS. The SWMP shall include a TMDL Monitoring and Assessment Plan.").

27.     Often, a WLA is a specific, quantitative limit assigned to a point source of pollution. However, the WLA for the Inlet is expressed as a percent reduction goal. Compliance with the terms of its SMS4 Permit fulfills any obligations they have toward implementing this TMDL.

## FACTUAL ALLEGATIONS

28.     The County has coverage under the SMS4 General Permit, and its permit is identified numerically as Permit No. SCR030000, Certificate No. SCR034301. The County's Permit requires the County to develop, implement, and enforce a SWMP, among other expectations. Pursuant to the terms of the County's permit, all permitted discharges must be in accordance with the approved SWMP and other provisions set forth in the Permit's requirements.

29.     The County does not comply with all requirements of the SMS4 Permit. Adherence to the SMS4 Permit requirements is vital for protecting and improving water quality of the Inlet.

30.     The claims alleged herein impact public health, water quality, the health and welfare of PMI members, and the use and enjoyment of the Inlet by PMI members.

31.     With approximately 3,108 acres of habitat conducive to shellfish production, the Inlet is acclaimed as the one of the most economically important shellfish-producing area along the coast of South Carolina.

32.     The County discharges stormwater from its MS4 into the Inlet and its tributaries.

7

67913625 v1

33.     The impacts of stormwater on the water quality of Murrells Inlet affect the recreational, aesthetic, cultural, and environmental interests of PMI members, and the claims below impact these interests. The organizational interests of PMI have been, are being, and will continue to be adversely affected by Defendant's actions.

34.     The Department conducted an audit of the County's stormwater program on October 20, 2022, resulting in the Department finding multiple deficiencies in the County's stormwater program.

35.     The Department's 2025 Annual Update Comprehensive Report for Shellfish Management Area 04 ("SFMA 04") demonstrates that water quality continues to decline in the Inlet.

36.     The water quality of the Inlet is also monitored through Coastal Carolina University's Waccamaw Watershed Academy, a volunteer water quality monitoring program that includes eight monitoring stations in the Inlet. Data from July 2023 to the present reveal widespread and sustained exceedances of regulatory thresholds.

37.     The County's most recent 2023 SWMP and its predecessor plans do not contain a section specifically for Part 1.3.8 of the Permit.

38.     The schedule, milestones, and measurable goals in the SWMP refer to the creation of the SWMP and each Minimum Control Measure, but none of these items specifically address accountability towards achieving the waste load allocation (WLA) of the TMDL for the Inlet.

39.     Despite the declining water quality in this area and the lack of required information in its SWMP, the County installed a new Outfall Pipe at Site 5 located near Dolphin St. and South Waccamaw Rd. that discharges into the Inlet.

8

40.    The permit conditions in Parts 3.3.1-3.3.3 require the completion and submission of a TMDL Implementations Plan for approved TMDL that includes the "assessment of the monitoring data," "prioritization of areas targeted for BMP implementation and underlying rationale," and "structural and nonstructural BMP to address the WLA" with a brief explanation of why it was selected. The County has not provided an assessment of achieving the WLA in any of its annual reports.

41.    The County has not maintained the reported BMPs, which is an obligation under its SMS4 permit.

## CLAIM FOR RELIEF

## FAILURE TO COMPLY WITH SMS4 PERMIT REQUIREMENTS

42.    The allegations of the foregoing paragraphs are incorporated herein by reference.

43.    The citizen suit provision of the CWA provides that "any citizen" may commence a suit "against any person" including a corporation "alleged to be in violation of an effluent standard or limitation under this chapter." 33 U.S.C. § 1365(a)(1). Section 505(f)(7) defines "an effluent standard or limitation" to include "a permit or condition of a permit issued under section 1342 of this title." 33 U.S.C. § 1365(f)(7).

44.    The County is subject to and bound by the conditions of its SMS4 Permit.

45.    Upon information and belief, County has failed to comply with specific conditions of its SMS4 Permit requirements, including:

      a. The County shall provide schedules, obligations or objectives, and measurable goals in the SWMP (SMS4 Permit, Part 1.3.6-8);

9

b. The County is prohibited from discharge of pollutants "into any water for which a Total Maximum Daily Load (TMDL) has been established unless the SWMP contains schedules, obligations, and measurable goals accountable towards achieving the waste load allocation (WLA) of the TMDL." (SMS4 Permit, Part 1.3.8);

c. The County shall initiate the monitoring described in Section 3.2.1.1 and shall complete and submit TMDL Implementation Plans for approved TMDL within 48 months from the Effective Date of the SMS4 Permit (SMS4 Permit Part 3.3.1-3);

d. The County shall document progress on the TMDL Implementation and Analysis in the Annual Report (SMS4 Permit Part 3.6);

e. The County shall inspect, and maintain, wherever and whenever necessary, all municipally-owned or maintained structural stormwater controls, including green infrastructure practices (SMS4 Permit Part 4.2.6.4.3);

46. Upon information and belief, with respect to many of the items above, not only did the County fail to report on each requirement as required by the SMS4 Permit but the County also failed to substantively comply with the requirement itself.

47. The failure to comply with the permit conditions listed above constitutes a separate and distinct violation of the Clean Water Act for each day such noncompliance continues beyond the applicable deadline.

67913625 v1

48.     Each separate violation of the CWA subjects the violator to a sliding daily penalty that can be up to $68,445 per day for violations that occurred after November 2, 2015. 33 U.S.C. §§ 1319(d), 1365(a); 40 C.F.R. §§ 19.1–19.4.

49.     Upon information and belief, the County has not fully complied with the requirements of its SMS4 Permit, and such noncompliance may be ongoing and continuous. Unless enjoined, the County's violations will likely continue.

## **RELIEF SOUGHT**

WHEREFORE, having fully set forth their allegations against Defendant, Plaintiff respectfully requests the following relief:

(1) Declare that the Defendant has violated and is in violation of the Clean Water Act as alleged herein;

(2) Enjoin the Defendant from further violations of the Clean Water Act;

(3) Order the Defendant to achieve full compliance with all applicable requirements of the SMS4 Permit within a reasonable timeframe set by the Court;

(4) Order Defendant to take appropriate remedial actions to address impacts to waters resulting from the alleged violations;

(5) Asses civil penalties as authorized by Sections 309(d) and 505(a) of the CWA, 33 U.S.C. § 1319(d), 1365(a), and 40 C.F.R. §§ 19.1-19.4;

(6) Award Plaintiff costs of litigation, including reasonable attorney fees and expert witness fees pursuant to Section 505(d), 33 U.S.C. § 1365(d);

(7) Award such other relief as the Court may deem just and proper.

11

67913625 v1

Respectfully submitted,

/s/ Monica K. Whalen
Amy E. Armstrong (Fed ID No. 9625)
Michael G. Corley (Fed ID No. 10590)
Monica K. Whalen (Fed ID No. 14372)
SOUTH CAROLINA
ENVIRONMENTAL LAW PROJECT
P.O. Box 1380
Pawleys Island, SC 29585
amy@scelp.org
michael@scelp.org
monica@scelp.org
(843) 527-0078


*Attorneys for the Plaintiff Preserve
Murrells Inlet, Inc.*

Georgetown, SC
July 10, 2026

12

67913625 v1